**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| In re Ozempic® (Semaglutide) Patent Litigation | ) ) ) ) ) ) ) | MDL No. 3038 |

**<u>MYLAN PHARMACEUTICALS INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO TRANSFER</u>**

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ............................................................................................ 2

II.   TRANSFER AND CENTRALIZATION IS INAPPROPRIATE ........................................ 5

      A.    MPI's Case Involves Distinct Questions of Fact and Law ..................... 6

      B.    Transfer and Consolidation Will Not Convenience the Parties and
            Witnesses .............................................................................. 10

      C.    Transfer and Consolidation Will Hinder the Just and Efficient Conduct of
            the Actions ............................................................................ 11

            1.    Summary Judgment is Unavailable in Delaware ..................... 12

            2.    The Delaware Court is Overly Congested ............................. 12

            3.    Consolidation in Delaware Conflicts with MPI's Right to Litigate
               This Case in a Proper Venue .............................................. 14

      D.    Cases Against MPI in West Virginia Are Not Automatically Transferred
            to Delaware ............................................................................ 14

      E.    If the Motion is Granted, the Cases Should Proceed in West Virginia ................. 16

III.  CONCLUSION ........................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*,
  No. 21-1739, 2022 WL 1046258 (D. Del. Apr. 7, 2022) ................................................... 12, 13

*AstraZeneca AB v. Mylan Pharms. Inc.*,
  No. 18-1562 (D. Del. Oct. 18, 2019), ECF No. 156 ....................................................... 2, 4, 14

*Bial-Portela & CA SA v. Alkem Lab'ys Ltd.*,
  No. 20-cv-00786 (D. Del. May 16, 2022) ................................................................................ 13

*Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*,
  No. 17-374, 2018 WL 5109836 (D. Del. Oct. 18, 2018) ................................................. 2, 4, 14

*In re Alexsam, Inc. ('608 & '787) Pat. & Cont. Litig.*,
  437 F. Supp. 3d 1374 (J.P.M.L. 2020) ................................................................................. 6, 11

*In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*,
  408 F. Supp. 2d 1354 (J.P.M.L. 2005) ...................................................................................... 13

*In re Auryxia*,
  412 F. Supp. 3d at 1349 n.4 ...................................................................................................... 15

*In re Entresto (Sacubitril/Valsartan) Patent Litigation*,
  437 F. Supp. 3d 1372 (J.P.M.L. 2020) ................................................................................. 3, 15

*In re: Genetic Techs. Ltd. ('179) Pat. Litig.*,
  883 F. Supp. 2d 1337 (J.P.M.L. 2012) ................................................................................. 7, 11

*In re JumpSport, Inc. ('845 & '207) Pat. Litig.*,
  338 F. Supp. 3d 1356 (J.P.M.L. 2018) ........................................................................ 5, 6, 9, 11

*In re Lantus Direct Purchaser Antitrust Litig.*,
  950 F.3d 1 (1st Cir. 2020) ......................................................................................................... 12

*In re Nebivolol ('040) Patent Litig.*,
  867 F. Supp. 2d 1354 (J.P.M.L. 2012) ........................................................................................ 9

*In re Pharmastem Therapeutics, Inc., Patent Litig.*,
  360 F. Supp. 2d 1362 (J.P.M.L. 2005) ........................................................................................ 9

*In re: Porcine Circovirus (PCV) Vaccine Prods. Pat. Litig.*,
  655 F. Supp. 2d 1348 (J.P.M.L. 2009) ........................................................................................ 6

*In re RAH Color Technologies LLC Patent Litigation*,
  347 F. Supp. 3d 1359 (J.P.M.L. 2018) ...................................................................................... 10

*In re: Select Retrieval, LLC ('617) Pat. Litig.*,
    883 F. Supp. 2d 1353 (J.P.M.L. 2012)........................................................5

*In re Sumatriptan Succinate Pat. Litig.*,
    381 F. Supp. 2d 1378 (J.P.M.L. 2005)...............................................6, 9, 11

*In re Zeroclick, LLC*,................................................................................6, 11

*Novo Nordisk Inc. v. Alvogen, Inc.*,
    No. 22-299 (D. Del.) ..................................................................... passim

*Novo Nordisk Inc. v. Dr. Reddy's Lab'ys, Ltd.*,
    No. 22-298 (D. Del.) ............................................................................4

*Novo Nordisk Inc. v. Mylan Pharmaceuticals Inc.*,
    No. 22-cv-23 (N.D.W. Va.) ..................................................................1

*Novo Nordisk Inc. v. Rio Biopharms. Inc.*,
    No. 22-294 (D. Del.) ............................................................................4

*Novo Nordisk Inc. v. Sun Pharm. Indus. Ltd.*,
    No. 22-296 (D. Del.) ............................................................................4

*Novo Nordisk Inc. v. Zydus Worldwide DMCC*,
    No. 22-297 (D. Del.) ............................................................................4

*Scramoge Tech. Ltd. v. Samsung Elecs. Co.*,
    No. 21-cv-454 (W.D. Tex. May 23, 2022), ECF No. 92 .......................14

**STATUTES**

21 U.S.C. § 355(b)................................................................................12

21 U.S.C. § 355(j)(5)(B)(iii)...................................................................3

28 U.S.C. § 1404..................................................................................13

28 U.S.C. § 1407...........................................................................5, 9, 11

**OTHER AUTHORITIES**

21 C.F.R. § 314.53(b)(1)........................................................................12

Mylan Pharmaceuticals Inc. ("MPI") respectfully opposes Novo Nordisk Inc. and Novo Nordisk A/S's ("Novo") motion to transfer *Novo Nordisk Inc. v. Mylan Pharmaceuticals Inc.*, No. 22-cv-23 (N.D.W. Va.), to the District of Delaware. Novo proposes that this case, which Novo chose to file in the District Court for the Northern District of West Virginia ("West Virginia case"), be centralized in Delaware with five cases Novo chose to file in Delaware against other manufacturers of generic pharmaceuticals. But the West Virginia case differs vastly from the Delaware cases, presenting myriad legal and factual issues absent from those cases and the proposed consolidation would only further burden an already overloaded Delaware court with factual and legal issues not at issue in any Delaware case. For these and other reasons explained herein, Novo has failed to meet its burden to show centralization is appropriate in this case. Accordingly, the Panel should deny Novo's motion.

In the West Virginia case, Novo is seeking to block MPI's entry into the generic semaglutide market by asserting eighteen patents, fourteen of which relate to mechanical injection devices for delivering any type of drug, i.e., they do not claim administering any specific active pharmaceutical ingredient, let alone the semaglutide drug product at issue. While Novo asserts some of those patents in Delaware, *eight patents are asserted exclusively against MPI's proposed generic product*, and not against any product at issue in Delaware. Non-infringement of those eight patents will not be litigated in Delaware, nor will any invalidity defenses be raised against those patents. Further, because there are myriad injection devices available to manufacturers of generic pharmaceuticals for their semaglutide products, even infringement issues for any commonly asserted patents will differ significantly. For example, MPI's proposed device may be entirely different than one or more of those five devices that are at issue in Delaware. For these and other reasons, there are insufficient common questions of fact or law, and many more unique ones, in

the West Virginia case, which strongly counsel against transfer and centralization. The District of Delaware is also overrun with patent cases, is down a judge, and is actively transferring cases to other courts to alleviate the Delaware court's workload. There are only three active judges in that District for about 970 patent cases. Accordingly, consolidation also works against the Delaware court's efforts to manage its patent-heavy docket. Transfer and centralization will not improve the just and efficient conduct of these cases. Novo thus fails to carry its burden to justify centralization.

Moreover, Novo's attempt to consolidate the West Virginia case with several very different actions pending in Delaware is an attempted end run around MPI's right to litigate this case in a proper forum. Novo filed this case in West Virginia understanding that Delaware is not a proper venue for this action. Indeed, it is well-established that venue does not lie over MPI in the District of Delaware. *See Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc*., No. 17-374, 2018 WL 5109836 (D. Del. Oct. 18, 2018) (finding venue improper over MPI in Delaware); *Novartis Pharms. Corp. v. Accord Healthcare Inc*., No. 18-1043, 2019 WL 2502535 (D. Del. June 17, 2019) (same); Mem. Op., *AstraZeneca AB v. Mylan Pharms. Inc*., No. 18-1562 (D. Del. Oct. 18, 2019), ECF No. 156 (same). "[A]s emphasized [by the Supreme Court] in *TC Heartland*, MPI indisputably has the right to have this patent infringement action be litigated in a venue that is proper under Section 1400(b)." *Novartis*, 2019 WL 2502535, at *6. Forcing MPI to litigate in Delaware via *post hac* consolidation is directly contrary to the just and efficient conduct of the litigation the consolidation concept is supposed to adhere to.

## I.     BACKGROUND

Novo filed six patent infringement actions against different Abbreviated New Drug Application ("ANDA")[1] filers seeking to block FDA approval of generic versions of Novo's

---

[1] An ANDA is an application for approval of a generic medication. Generic drug applications are termed "abbreviated" because they are not required to include animal or human data to establish

Ozempic® (semaglutide) diabetes product. Novo sued MPI in the Northern District of West Virginia and asserted infringement of eighteen patents, as shown in Figure 1, below.[2]

|  | U.S. Patent No. | MPI<br>N.D. W.Va. | Alvogen | DRL | Rio | Sun | Zydus |
|---|---|---|---|---|---|---|---|
|  |  |  | D. Del. | | | | |
| 1 | 8,114,833 | ✓ |  |  |  |  |  |
| 2 | 8,684,969* | ✓ |  |  |  |  |  |
| 3 | 9,108,002* | ✓ |  |  |  |  |  |
| 4 | 9,616,180* | ✓ |  |  |  |  |  |
| 5 | 9,861,757* | ✓ |  |  |  |  |  |
| 6 | 10,357,616* | ✓ |  |  |  |  |  |
| 7 | 8,536,122 | ✓ |  |  |  |  |  |
| 8 | 10,376,652* | ✓ |  |  |  |  |  |
| 9 | 8,920,383* | ✓ | ✓ | ✓ |  |  |  |
| 10 | 9,775,953* | ✓ | ✓ | ✓ |  |  |  |
| 11 | 10,220,155* | ✓ | ✓ | ✓ |  |  |  |
| 12 | 11,097,063* | ✓ | ✓ | ✓ |  |  |  |
| 13 | RE46,363* | ✓ | ✓ | ✓ |  |  |  |
| 14 | 9,687,611* | ✓ | ✓ | ✓ | ✓ |  |  |
| 15 | 9,457,154* | ✓ | ✓ | ✓ | ✓ |  |  |
| 16 | 8,129,343 | ✓ | ✓ | ✓ | ✓ |  |  |
| 17 | 9,132,239* | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 18 | 10,335,462 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

*Device Patent                                    **Figure 1.**

safety and effectiveness. Instead, generic applicants demonstrate that their product is bioequivalent to the brand product. *See Abbreviated New Drug Application (ANDA)*, U.S. Food & Drug Admin., https://www.fda.gov/drugs/types-applications/abbreviated-new-drug-application-anda.

[2] As explained in *In re Entresto (Sacubitril/Valsartan) Patent Litigation*, 437 F. Supp. 3d 1372, 1373 (J.P.M.L. 2020), under the Hatch-Waxman Act, Congress established an incentive for companies to bring generic versions of branded drugs to market faster than they otherwise might by granting the first company to file an ANDA an "exclusivity period" of 180 days, during which the FDA may not approve for sale any competing generic version of the drug. Submitting an ANDA with a "paragraph IV certification"—stating that the patents listed in the FDA's Orange Book are invalid or not be infringed—constitutes a statutory act of infringement that creates subject-matter jurisdiction for a district court to resolve any disputes regarding patent infringement or validity before the generic drug is sold. If the patent-holder initiates an infringement action against the ANDA filer within 45 days of receipt of the paragraph IV certification, then the FDA may not approve the ANDA until the earlier of either 30 months or a decision by a court that the patent is invalid or not infringed by the ANDA. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

Before Novo filed its suit against MPI, Novo requested that MPI agree to proceed in Delaware. MPI refused because venue is not proper in Delaware. *See, e.g.*, *Bristol-Myers Squibb*, 2018 WL 5109836; *Novartis*, 2019 WL 2502535; *AstraZeneca*, No. 18-1562, ECF No. 156. Recognizing that Delaware is an improper venue for MPI, Novo brought suit in the Northern District of West Virginia.

The parties held a Rule 26(f) conference on April 25, 2022, and filed their conference report on May 16, 2022. West Virginia case, ECF No. 27. The parties served initial disclosures on May 23, 2022.

Novo sued Alvogen, Inc. ("Alvogen"), Dr. Reddy's Laboratories, Ltd., and Dr. Reddy's Laboratories, Inc. (collectively with Dr. Reddy's Laboratories, Ltd., "DRL") in two cases filed in the District of Delaware. Novo asserted just ten patents in those cases. *See* Fig. 1.

Novo also sued Rio Biopharmaceuticals Inc. and EMS S/A (collectively, "Rio") in another District of Delaware case and asserted only five patents. *See* Fig. 1.

Finally, Novo sued Sun Pharmaceutical Industries Ltd. and Sun Pharmaceutical Industries, Inc. (collectively, "Sun"), as well as Zydus Worldwide DMCC, Zydus Pharmaceuticals (USA) Inc., Cadila Healthcare Ltd. (collectively, "Zydus"), in another two cases filed in the District of Delaware, in which Novo asserted only two patents. *See* Fig. 1.

On May 11, 2022, the presiding judge for the five Delaware cases,[3] Chief Judge Colm Connolly, issued an order requiring Novo to indicate by June 13, 2022, if coordinated discovery or *Markman* proceedings were anticipated. *See* Order, *Rio Biopharms.*, No. 22-294, ECF No. 15.

---

[3] *Novo Nordisk Inc. v. Rio Biopharms. Inc.*, No. 22-294 (D. Del.); *Novo Nordisk Inc. v. Sun Pharm. Indus. Ltd.*, No. 22-296 (D. Del.); *Novo Nordisk Inc. v. Zydus Worldwide DMCC*, No. 22-297 (D. Del.); *Novo Nordisk Inc. v. Dr. Reddy's Lab'ys, Ltd.*, No. 22-298 (D. Del.); *Novo Nordisk Inc. v. Alvogen, Inc.*, No. 22-299 (D. Del.) (the "Delaware cases").

Novo has yet to respond to this Order but, as explained in its Motion, Novo "expects that the Delaware Actions will be consolidated for all purposes, including discovery, claim construction proceedings, and trial." Pls.' Mem. 2, ECF No. 1-1.

## II.   TRANSFER AND CENTRALIZATION IS INAPPROPRIATE IN VIEW OF THE UNIQUE FACTUAL AND LEGAL ISSUES IN THE WEST VIRGINIA ACTION

The Panel is authorized to transfer "civil actions involving one or more common questions of fact are pending in different districts" "to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407. "Parties seeking centralization have the burden of demonstrating the existence of common questions of fact such that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re: Select Retrieval, LLC, ('617) Pat. Litig.*, 883 F. Supp. 2d 1353, 1354 (J.P.M.L. 2012). "[W]here only a minimal number of actions are involved, the proponents of centralization bear a heavier burden to demonstrate that centralization is appropriate." *In re JumpSport, Inc., ('845 & '207) Pat. Litig.*, 338 F. Supp. 3d 1356, 1357 (J.P.M.L. 2018) (denying motion to centralize six patent cases in two districts).

"Centralization of any litigation—including patent cases—is not automatic, and will necessarily depend on the facts, parties, procedural history and other circumstances in a given litigation." *In re: Select Retrieval*, 883 F. Supp. 2d at 1354 (citation omitted) (denying motion to centralize nine patent cases in nine districts). The Panel considers, for example, if multiple patent cases pending in one district have already been consolidated for pretrial proceedings or have been assigned to the same judge. *See In re JumpSport*, 338 F. Supp. 3d at 1357 ("Of the six actions on the motion, four have been consolidated for pretrial proceedings in the Eastern District of Texas, while the two actions pending in the Northern District of Georgia have been assigned to the same

judge"); *In re Zeroclick, LLC*, 437 F. Supp. 3d 1362 (J.P.M.L. 2020) ("There are, however, only five actions pending in two districts, and the four Texas actions are all before the same judge.").

This holds true for Hatch-Waxman cases—centralization of those cases is not automatic either. *See In re Sumatriptan Succinate Pat. Litig.*, 381 F. Supp. 2d 1378, 1379 (J.P.M.L. 2005). The Panel has denied a motion to centralize Hatch-Waxman cases when multiple actions in one district had already been consolidated and a lone case was pending in a different district. *See id.* That motion "essentially involve[d] only two actions pending in two districts" and centralization was inappropriate. *Id.* at 1378; *see also In re JumpSport*, 338 F. Supp. 3d at 1357 ("Thus, there effectively are only two actions pending here in only two districts.").

Novo Nordisk makes none of the showings required to justify transfer and centralization and thus fails to carry its burden. As explained below, there are (1) insufficient common questions of fact and law to justify a transfer, (2) centralization will not serve the convenience of the parties and witness, and (3) consolidated proceedings will not further the just and efficient conduct of these litigations.

### A.    MPI's Case Involves Distinct Questions of Fact and Law

The West Virginia case involves many unique questions of law and fact not at issue in the Delaware cases. Novo asserts eighteen patents against MPI. Eight of those patents, containing a total of 125 unique patent claims, are not at issue in any Delaware case. *See In re: Porcine Circovirus (PCV) Vaccine Prods. Pat. Litig.*, 655 F. Supp. 2d 1348, 1349 (J.P.M.L. 2009) ("More importantly, that action involves four Wyeth patents that are not at issue in the other four actions…."). At minimum, the alleged infringement of each of these eight patents involves unique questions that will not be addressed in Delaware. *See In re Alexsam, Inc. ('608 & '787) Pat. & Cont. Litig.*, 437 F. Supp. 3d 1374, 1375 (J.P.M.L. 2020) (finding "significant differences among the actions" when "[t]he defendants make different 'accused products,' and the same patent claims

are not at issue in all actions"). One of the patents, the '833 patent, is the only one with claims covering manufacturing methods. So, among the six cases, only MPI's West Virginia case implicates manufacturing processes.

Claim construction issues are also unique. For example, every claim of the eight patents asserted only against MPI presents potential issues not at play in Delaware. If any of the terms in these 125 patent claims gives rise to a claim construction dispute, the dispute will not be addressed in Delaware. Finally, any invalidity challenge MPI raises against the 125 unique patent claims, including any underlying claim construction issues, will not be litigated in Delaware.

Even for patents that Novo asserts in both forums, the issues do not overlap. The proposed generic products, like Ozempic®, are preloaded injection devices containing semaglutide. Fourteen of the eighteen asserted patents pertain to the mechanical injection device, not the active pharmaceutical drug product (six of those device patents are asserted only against MPI, eight are also asserted in Delaware). There are myriad injection devices available to manufacturers of generic pharmaceuticals and the ANDA products Novo targets are likely to be structurally and mechanically different. Non-infringement defenses will no doubt vary. *See In re: Genetic Techs. Ltd. ('179) Pat. Litig.*, 883 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012) ("Also weighing in favor of denying centralization is that certain defendants have idiosyncratic potentially dispositive defenses that will implicate significant unique facts.").

Nor will the invalidity issues for the common patents necessarily overlap, and Novo's contrary view is misguided. Novo asserts that "overlapping invalidity theories, leading to common questions of fact," will arise for commonly asserted patents, Pls.' Mem. 7, and "factual inquiries" pertaining to obviousness (e.g., the scope and content of the prior art, the differences between the claimed invention and the prior art, motivation to combine prior art references) "will be common

across all cases in which a patent is challenged as obvious," *id.* at 8. But Novo ignores each defendant's ability to raise distinct invalidity challenges based on different prior art references or different invalidity theories other than obviousness. And Novo completely disregards the invalidity issues for the eight patents asserted only against MPI. Even if some issues may overlap, centralization is not warranted given the many more issues that will be unique.

Novo tries to downplay the unique issues that will arise from the plethora of device patents it asserts. Novo contends the first step of the infringement analysis, construing the relevant claims, "is common to all Defendants." *Id.* at 7. That is wrong. Even for the commonly asserted patents, different devices from different manufacturers are likely to implicate different claim construction issues, at least because the devices may all operate differently.[4] For the second step of the analysis, comparing the claim to the accused products or processes, Novo focuses on only one commonly-asserted method of treatment patent (the '462 patent). *Id.* Any common issues for one asserted patent cannot outweigh the many unique issues stemming from the other seventeen asserted patents.

Novo likewise glosses over significant differences among the asserted patents by focusing on patent families instead of each individual patent itself. *See id.* at 11-13. But noninfringement and invalidity are not addressed on a family-by-family basis: patents in the same family differ significantly and will raise unique questions of law and fact. Indeed, the issues must be addressed on a claim-by-claim basis for each patent. For example, Novo relies on the '343 patent asserted in Delaware to urge that issues from the '122 patent, which is asserted only against MPI in West

---

[4] While MPI believes it is likely that different ANDA filers are using different injection devices, because ANDAs are confidential, MPI cannot know for sure the details of other ANDA filer's products. Only Novo knows, or will know once discovery advances in Delaware, the details of each ANDA filers' product.

Virginia, will be addressed in both cases. But the claims and inventors of these patents differ significantly. Florencio Zaragoza Doerwald, for example, who is an inventor on the '122 patent, is not an inventor on the '343 patent, demonstrating different claim scope and inventorship.

Finally, Novo's case citations are unconvincing. Novo relies heavily on *In re Nebivolol ('040) Patent Litig.,* 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012), to argue that Hatch-Waxman cases should always be centralized. But *Nebivolol* and the present cases are incomparable. There, a single patent (claiming a pharmaceutical compound) was asserted against fifteen generic pharmaceutical manufacturers, "all defendants [were] anticipated to raise similar arguments concerning non-infringement defenses," and all would likely raise obviousness challenges based on the same prior art patent. *Id.* at 1355. Here, by contrast, Novo asserts eighteen patents in total, the number of asserted patents varies greatly by case, eight patents are asserted only against MPI, most of the patents cover mechanical injection devices, and the accused products likely use different devices that will produce unique non-infringement grounds. Novo also cites *In re Pharmastem Therapeutics, Inc., Patent Litig.*, 360 F. Supp. 2d 1362, 1363 (J.P.M.L. 2005), to argue that patent cases share sufficient factual and legal questions any time they involve some overlapping patents. But the situation in *Pharmastem*, in which six cases in *six different district courts* were involved, was much different than the situation here. The benefits of centralizing cases scattered across six districts are distinguishable from a motion involving only two districts. *See In re JumpSport*, 338 F. Supp. 3d at 1357 (for motion involving six cases in two districts, "there effectively [were] only two actions pending here in only two districts"). Like in *JumpSport*, these matters can efficiently proceed in separate courts. *See alsi In re Sumatriptan*, 381 F. Supp. 2d at 1378 ("Section 1407 centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation, which essentially involves

only two actions pending in two districts."). Likewise, *In re RAH Color Technologies LLC Patent Litigation*, 347 F. Supp. 3d 1359, 1360 (J.P.M.L. 2018), another decision Novo cites, involved cases in three districts. And there, the same accused products were at issue in the different cases. *Id.* at 1360 n.4. Here, each case concerns a different accused ANDA product.

### B.      Transfer and Consolidation Will Not Convenience the Parties and Witnesses

Centralization will not serve the convenience of the parties or witnesses. Fact and expert discovery will necessarily differ among the defendants and will be materially different in West Virginia and Delaware. Each case involves a different accused ANDA product and likely different injection devices, so distinct facts will be discovered related to those products, their development, and their regulatory history.

Even fact discovery from Novo will differ in West Virginia and Delaware. MPI must discover and develop facts pertaining to the eight patents asserted only against it and only in West Virginia. The development of the purported inventions in those patents is irrelevant in the Delaware cases, making related discovery (including document productions and inventor depositions) necessary only in West Virginia. This will lead to a unique witness lineup because four inventors on those eight patents (Tina Bjeldskov Pedersen, Claude Bonde, Dorthe Kot Engelund, and Florencio Zaragoza Doerwald) are not inventors on any patent asserted in Delaware. These issues unique to MPI create very real and practical issues in coordinating with the Delaware actions, rendering a consolidated action more complex than necessary.

Expert discovery will also necessarily differ. For example, the defendants will likely retain different experts for infringement issues. Multiple non-infringement expert reports and depositions are inevitable. Discovery from Novo's experts will also vary. Those experts will inevitably prepare multiple expert reports on any supposed infringement by the multiple distinct ANDA products and will be subject to separate depositions on those opinions.

In fact, all the benefits Novo identifies can be obtained through *coordination* of cases alone, which is common practice for patent cases across multiple districts. Centralization is unnecessary. *See In re: Genetic Techs.*, 883 F. Supp. 2d at 1338 ("[C]oordination among the involved courts— if necessary—may be a workable alternative to formal centralization."). Novo urges that consolidation "will eliminate the need to make multiple, costly document productions, on different schedules, and pursuant to different search and review parameters…." Pls.' Mem. 9. But multiple productions will not be avoided. Whether these cases are litigated in one district or two, Novo must serve document production requests on each separate defendant and each separate defendant must make separate document productions on Novo, with no requirement that they use the same discovery approaches. None of those discovery requirements will be avoided through centralization. The parties can coordinate any overlapping discovery issues where appropriate. Depositions (including foreign ones) can also be coordinated to the extent possible. *See In re Alexsam*, 437 F. Supp. 3d at 1376 ("The depositions of the patents' common inventor, as well as other [plaintiff] witnesses, can be coordinated.").

C.    **Transfer and Consolidation Will Hinder the Just and Efficient Conduct of the Actions**

The just and efficient conduct of the actions will not benefit from centralization. Novo expects the Delaware cases to be consolidated, so "there effectively are only two actions pending here in only two districts." *In re JumpSport*, 338 F. Supp. 3d at 1357 (motion involving six cases in two districts); *see also In re Zeroclick*, 437 F. Supp. 3d at 1362. These matters can efficiently proceed in separate courts. *See In re Sumatriptan*, 381 F. Supp. 2d at 1378 ("Section 1407 centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation, which essentially involves only two actions pending in two districts."). And proceeding in West Virginia will be key to efficiency.

### 1.      Summary Judgment is Unavailable in Delaware

Judges in the Northern District of West Virginia will entertain summary judgment motions in Hatch-Waxman cases, whereas judges in the District of Delaware, including Judge Connolly, do not. While Novo mentions Judge Connolly's scheduling order for Hatch-Waxman cases, Pls.' Mem. 15, Novo neglects the section in that order stating that "[t]he Court will not entertain summary judgment motions." Connolly Scheduling Order for Hatch-Waxman Patent Infringement Cases at 19, *available at* https://www.ded.uscourts.gov/sites/ded/files/chambers/ Scheduling%20Order%20for%20Hatch-Waxman%20Patent%20Infringement%20Cases.pdf. Because this case involves over a dozen device patents that are not infringed and are improperly listed in the Orange Book,[5] the availability of summary judgment is important, and will, should it become necessary, greatly streamline the litigation against MPI. Improper listing and non-infringement issues may be ripe for summary determination well before any trial date. If this case proceeds in Delaware, more efficient resolution through those avenues will be lost, forcing the parties to litigate through trial patents that are ripe for summary disposition much earlier.

### 2.      The Delaware Court is Overly Congested

Efficiency may also suffer from centralization in Delaware. The District of Delaware is overloaded with patent cases. According to Judge Connolly himself, "as of February 12, 2022, there were 970 open patent cases in the District of Delaware" and "between January 1, 2021 and December 31, 2021 there were 953 weighted filings per judge in this District." *Allen Med. Sys.,*

---

[5] Because the device patents at issue in the West Virginia case do not claim the drug product at issue, Novo never should have listed these patents in the Orange Book. *See, e.g.*, *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1 (1st Cir. 2020). Patent owners can only list patents in the Orange Book that claim (1) a drug substance, (2) a drug formulation, or (3) a method of using a drug. 21 C.F.R. § 314.53(b)(1); 21 U.S.C. § 355(b). Improperly listing these patents in the Orange Book is Novo's attempt to secure rights it is simply not entitled to, and it will be challenged by MPI.

*Inc. v. Mizuho Orthopedic Sys., Inc.*, No. 21-1739, 2022 WL 1046258, at *3 (D. Del. Apr. 7, 2022); *see also In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.*, 408 F. Supp. 2d 1354 (J.P.M.L. 2005) (refusing to transfer a case to the Central District of California because "the [potential transferee] judge assigned to the constituent action pending in that district expressed reluctance in light of her current caseload").[6] In fact, Judge Connolly recently transferred the *Allen Medical* case because of his burdensome patent docket, explaining that "[t]he disparity in the courts' burdens [between the Northern District of California and the District of Delaware] is compounded by the fact that the District of Delaware currently has only three district judges…." *Allen Med*, 2022 WL 1046258, at *3. In a recent order in a Hatch-Waxman case, moreover, Judge Connolly required the plaintiff to reduce the number of asserted claims from fifteen to four or else "the Court will issue its trial opinion in due course as its caseload allows and will not entertain any application by Plaintiffs for injunctive relief before the Court issues its trial opinion." *Bial-Portela & CA SA v. Alkem Lab'ys Ltd.*, No. 20-cv-00786 (D. Del. May 16, 2022). Judge Connolly noted "the limited resources of this Court, the caseload of this Court, and the fact that the judge in this case, like any human being, has finite perceptive, retentive, and cognitive abilities." *Id.* Furthermore, any history Judge Connolly may have with litigations related to Novo's liraglutide products (Victoza® and Saxenda®) has not given him any experience with the semaglutide active ingredient and proposed products at issue here or MPI's injection device that is at issue in West Virginia. These facts counsel against adding eight new patents to the Delaware case. Indeed, other courts, in the context of motions to transfer venue under 28 U.S.C. § 1404, recognize that courts should consider "whether there is an appreciable difference in docket congestion between the two

---

[6] The most recent data (March 2022) available from the National Judicial Caseload Profile reflects 353 weighted filings per judge in the Northern District of West Virginia and 902 weighted filings per judge in Delaware. Ex. A.

forums." Mem. Op. at 11, *Scramoge Tech. Ltd. v. Samsung Elecs. Co.*, No. 21-cv-454 (W.D. Tex. May 23, 2022), ECF No. 92 (citation omitted). The Panel should likewise consider these facts.

Novo seems to believe the just and efficient conduct of these cases will improve with consolidation simply because they are Hatch-Waxman cases. But as explained above, Hatch-Waxman cases are not automatically centralized. The legislative history Novo itself cites recognizes that multi-district litigation for Hatch-Waxman cases should be used only "when appropriate." H.R. Rep. No. 98-857, pt. 1, at 28 & n.14 (1984). And these are not typical Hatch-Waxman cases. Novo's market protection strategy includes improperly listing a copious number of device patents in the Orange Book. MPI will challenge Novo's improper listings, and non-infringement issues related to MPI's injection device abound.

### 3. Consolidation in Delaware Conflicts with MPI's Right to Litigate This Case in a Proper Venue

"MPI indisputably has the right to have this patent infringement action be litigated in a venue that is proper under Section 1400(b). *Novartis*, 2019 WL 2502535, at *6. The District of Delaware is not a proper venue. *Bristol-Myers Squibb*, 2018 WL 5109836; *Novartis*, 2019 WL 2502535; *AstraZeneca*, No. 18-1562, ECF No. 156. The just conduct of this case is not secured where MPI is forced to litigate a case involving eight unique patents asserted against no defendant in any Delaware case in the District of Delaware, an unquestionably improper forum. And Novo gives no valid reason to force MPI into an improper venue via this Panel.

### D. Cases Against MPI in West Virginia Are Not Automatically Transferred to Delaware

Novo cites six Panel decisions to allege that motions under "highly similar circumstances" have been granted transferring West Virginia cases against MPI to the District of Delaware. Pls.' Mem. 5; *see also id.* at 14. But the circumstances in those cases were not "highly similar" to those

14

here at all. In those cases, because the identity of issues was much closer than here—including that none of them involved device patents—MPI did not oppose centralization in five of those matters.

In *In re Entresto*, the plaintiff sought to consolidate a West Virginia action asserting four patents, none of which related to a device, with three actions pending in Delaware where the same four patents were asserted. 437 F. Supp. 3d at Schedule A (listing cases to be consolidated).

In *In re Auryxia (Ferric Citrate) Patent Litigation*, the plaintiff sought to consolidate a West Virginia action with three actions pending in Delaware where the same fourteen patents[7] were asserted against the ANDA filer in each case. 412 F. Supp. 3d 1347, 1349 (J.P.M.L. 2019). As with *Entresto*, the patents did not relate to devices.

In *In re Palbociclib Patent Litigation*, the plaintiff filed twelve actions in Delaware and one action in West Virginia asserting one or more of just three patents. 396 F. Supp. 3d 1360, 1361 (J.P.M.L. 2019). The case against MPI in West Virginia involved all three patents, as did most of the Delaware cases. None of the three asserted patents involved devices.

*In re Sitagliptin Phosphate ('708 & '921) Patent Litigation* involved thirteen actions in Delaware and one action in West Virginia where the same two patents, neither of which related to a device, were asserted against every ANDA filer. 402 F. Supp. 3d 1366, 1366-1367 (J.P.M.L. 2019).

*In re Xarelto (Rivaroxaban) ('310) Patent Litigation*, involved four actions in Delaware and one action in West Virginia in which the plaintiff asserted the same sole patent related to methods of treating heart conditions in each action. MDL No. 3017, 2021 WL 5872990, at *1 (J.P.M.L. Dec. 10, 2021).

---

[7] Plaintiff asserted the same fourteen patents against every ANDA filer except one defendant in a Delaware action, but just one of the fourteen patents was not asserted in that case. *In re Auryxia*, 412 F. Supp. 3d at 1349 n.4.

The remaining case, *In re Kerydin (Tavaborole) Topical Sol. 5% Patent Litigation*, likewise involved a materially different situation. The plaintiff there brought three cases (two in Delaware and one in West Virginia) asserting four patents on pharmaceutical formulations and treatment methods against all the defendants. 366 F. Supp. 3d 1370, 1371 (J.P.M.L. 2019). There were no patents asserted only against MPI in West Virginia compared to defendants in Delaware, let alone eight like the patents asserted solely against MPI here. And *In re Kerydin* did not involve device patents. This case by contrast includes fourteen of them, and six are asserted only against MPI in West Virginia.

### E.     If the Motion is Granted, the Cases Should Proceed in West Virginia

Novo urges the Panel to "select the District of Delaware for consolidated pretrial proceedings" (Pls.' Mem. 14) but, to the extent consolidation is appropriate at all, and while the Northern District of West Virginia has its own busy docket, the better forum for consolidation is the Northern District of West Virginia. As explained above, the District of Delaware is exceptionally inundated with patent cases and Judge Connolly's patent docket is overwhelming. There is no reason to add to his workload by burdening him with unique factual and legal questions arising from the eight patents asserted only against MPI's semaglutide ANDA in the West Virginia case. As explained above, consolidation before Judge Connolly would also likely eliminate the chance of summary judgment in these cases. This motion should not be granted but, if it is, the matters should be centralized in the Northern District of West Virginia.

## III.     CONCLUSION

For the reasons above, MPI respectfully asks the Panel to deny Novo's motion.

Respectfully submitted on this 31st day of May 2022.

/s/ Brandon M. White
Brandon M. White
**PERKINS COIE LLP**
700 13th Street NW, Suite 800
Washington, DC 20005
BMWhite@PerkinsCoie.com
Phone: (202) 654-6200

*Counsel for Defendant*
*Mylan Pharmaceuticals Inc.*

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

|  |  |  |
|---|---|---|
| | ) | |
| In re Ozempic® (Semaglutide) Patent | ) | |
| Litigation | ) | |
| | ) | MDL No. 3038 |
| | ) | |
| | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial

Panel on Multidistrict Litigation, I hereby certify that *Mylan Pharmaceuticals Inc.'s Opposition*

*to Plaintiffs' Motion to Transfer* was served on counsel of record via ECF on May 31, 2022.

/s/ *Brandon M. White*
Brandon White